OPINION *Page 2 
{¶ 1} Appellants Richard F. Estep and Joyce J. Estep ("Appellants") appeal the December 13, 2007, judgment entry of the Fairfield County Court of Common Pleas affirming the decision of the Liberty Township Board of Zoning Appeals ("BZA") to deny non-conforming use status to Appellants' property.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In July, 2006, Appellants purchased two one-acre parcels of adjoining property located at 145 Baltimore-Somerset Road in Baltimore, Ohio. The prior owner of the property, Bernard Franks, had operated a junk yard on the site prior to 1960. Mr. Franks died testate on February 14, 2006, at the age of 87 and the property was sold by his estate to Appellants on July 13, 2006. In August, 2006, Mr. Estep publically announced he was intending to operate a salvage yard on the premises.
 {¶ 3} The property lies within Liberty Township. The Township passed a comprehensive Zoning Resolution on January 16, 1960, which zoned Mr. Franks' property as rural-residential. The Zoning Resolution remained in effect for all times relevant hereto.
 {¶ 4} Non-conforming uses are governed by Article V of the Zoning Resolution. Article V reads as follows:
 {¶ 5} "1. No building, structure or land on which a non-conforming use ceases for a period of two (2) year shall again be devoted to a non-conforming use without approval of the Board of Zoning Appeals.
 {¶ 6} "2. Within a period of sixty (60) days after enactment of this resolution, the owners or lessees of all existing non-conforming uses shall list such uses, beginning *Page 3 
date of such uses, and date of operation of same with the Liberty Township Zoning Commission. If, after sixty (60) days grace period allowed for the registration any non-conforming use has not been registered, the right to continue such use shall be forfeited.
 {¶ 7} "A non-conforming use map and master list showing the dates and names of owners or lessees shall be compiled and kept on file in the office of the Liberty Township Zoning Inspector."
 {¶ 8} The resolution further defines a "non-conforming use" as "[u]se of a building or of land that does not conform to the regulations for the districts in which it is situated."
 {¶ 9} On August 7, 2006, an inquiry was filed by a group, Concerned East Side Neighborhood ("CESN") with the Liberty Township trustees asking, among other questions, as to the current zoning status of the property and the past zoning history of the property. The Zoning Administrator, Tom Spring, responded by letter dated January 12, 2007, which stated, in pertinent part:
 {¶ 10} "You had requested an official decision by the Zoning Department on the use of the property. I see no zoning violations occurring on this property at this time."
 {¶ 11} This letter prompted a notice of appeal to be filed on February 6, 2007, with the BZA by CESN through its legal counsel. In its appeal, CESN requested "the Board take immediate action to reverse the Zoning Administrator's decision that the newly-proposed use of the property as a retail salvage dealership is valid and legal, so that the non-conforming use provisions of the Article V of the [Zoning] Resolution may properly be upheld, and so that new and more intense uses are not created and *Page 4 
established as future legal non-conforming uses." CESN did not specifically contend that the property was not properly registered under the 1960 Zoning Resolution. Rather CESN contended Mr. Franks never operated the site as a retail salvage yard, and even if he had, Mr. Franks abandoned the use of the property as such for a period of two years and the use was replaced by a conforming use (residential only, with historic outdoor storage of old vehicle and parts).
 {¶ 12} CESN also alleged the Zoning Administrator and Liberty Township Trustees withheld public documents, violated public records laws, and improperly held meetings to discuss the zoning of the property.
 {¶ 13} The BZA conducted a hearing on the CESN appeal on April 18, 2008. CESN continued to contend that Mr. Estep was improperly attempting to resurrect and/or expand an impermissible non-conforming use. CESN called two property owners, Fred Reedy and Jim Reed, from the surrounding area that testified that there has no been no activity as a junkyard for decades.
 {¶ 14} CESN also introduced testimony and exhibits to support its position that "the township trustees violated the procedure for the proper inspection of this [CESN] zoning complaint and in so doing violated * * * due process". T. at 37.
 {¶ 15} Relevant to this appeal, CESN also called Mr. Spring regarding township records. The following colloquy occurred between counsel for CESN, Mike Shannon, and the Zoning Administrator:
 {¶ 16} "Mr. Shannon: Okay. First of all I — I do want to thank Nancy for making the township office available for my paralegal to go and review the records, and Tom took extra time to meet with me today. *Page 5 
 {¶ 17} "Suffice it to say that the township is in great need of a records retention policy, if, in fact, they don't have one. I think Mr. Spring could confirm for the record that there are a great deal of public records that should be in the files that are not in the files. But notwithstanding that, I would like to ask Mr. Spring a couple questions.
 {¶ 18} "First of all, I'd like him to identify this document, which would be * * * attachment M. And this is the original zoning resolution of Liberty Township from 1960 that we discovered in the files today. And I will tell you this: When it comes to your address files, your zoning order files, they are in complete disarray. But there is one file that is meticulous beyond description, and that is the file of the minutes of proceedings of the Board of Zoning and Appeals. * * * Mr. Spring, did you bring that book with you?
 {¶ 19} [Thereupon, Exhibit M is marked for purposes of identification]
 {¶ 20} "Mr. Spring: I did.
 {¶ 21} "Mr. Shannon: First of all, the zoning resolution that we found in the back of the book this afternoon, I have a copy of it here. And what I wanted you to confirm that this is in fact the original zoning resolution of Liberty Township.
 {¶ 22} "Mr. Spring: That's my understanding. It's dated January — January 16th, 1960.
 {¶ 23} "Mr. Shannon: And that was subsequently adopted by the electorate in May of that year; is that correct?
 {¶ 24} "Mr. Spring: The board of elections confirmed that the voters approved that at the May 1960 primary.
 {¶ 25} "Mr. Shannon: Okay. Now, we know that Mr. Franks' operation existed prior to 1960, some say back to 1937. But I'd like you to go to page 9 of the original *Page 6 
zoning ordinance of this township, Section V, Existing Nonconforming Uses. And there are only three sections there. Do you have that on page 9, sir?
 {¶ 26} "Mr. Spring: Oh, in the booklet, you mean?
 {¶ 27} "Mr. Shannon: Yes. Section V.
 {¶ 28} "Mr. Spring: Okay.
 {¶ 29} Mr. Shannon: And it is, again, your original — {¶ 30} Mr. Spring: Page 5?
 {¶ 31} Mr. Shannon: Page 9, Section V.
 {¶ 32} * * *
 {¶ 33} "Mr. Spring: Okay, I see it now.
 {¶ 34} "Mr. Shannon: Existing Nonconforming Uses. This was to apply to all existing nonconforming uses in 1960 and from there forward. No. 1, no building, structure, or land on which a nonconforming use ceases for a period of two years shall again be devoted to a nonconforming use without approval of the BZA.
 {¶ 35} "No. 2, within a period of 60 days after the enactment of this resolution, the owners or lessees of all existing nonconforming uses shall list such uses beginning the date of such use and the date of operations of same with the Liberty Township Zoning Commission. If after a 60-day grace period allowed for the registration any nonconforming use has not been registered, the right to contend for such use shall be forfeited. Am I reading that verbatim.
 {¶ 36} "Mr. Spring: Uh-huh.
 {¶ 37} "Mr. Shannon: Is that correct?
 {¶ 38} "Mr. Spring: Yes. *Page 7 
 {¶ 39} "Mr. Shannon: And you were present today when I reviewed the minutes from the BZA as well as the planning and zoning commission; is that correct?
 {¶ 40} "Mr. Spring: That is correct.
 {¶ 41} "Mr. Shannon: Okay. And I can attest for the record and the reason I asked the inspector to bring at least the BZA minute book with him is that I wanted to submit or incorporate by reference the official minutes from your BZA as well as the official minutes from your planning and zoning commission because they will confirm beyond a shadow of a doubt that at no time since the enactment of this ordinance did Mr. Franks come forward and register his nonconforming use. As a consequence of that, it ceased to exist 61 days after the effective date of this resolution.
 {¶ 42} "Mr. McNeer: You've submitted it as Exhibit M, as in Mike?
 {¶ 43} "Mr. Shannon: Yes, sir, that was M. Now, Mr. Spring, I also wanted to confirm that — again, you've been in this position I think the same night you started August or September of last year.
 {¶ 44} "Mr. Spring: I started in late August.
 {¶ 45} "Mr. Shannon: Okay. The zoning inspector maintains address files for every address in the township; is that correct?
 {¶ 46} "Mr. Spring: Correct. Well, for every address that which someone has applied for a permit or some kind of action.
 {¶ 47} "Mr. Shannon: Correct. I stand corrected.
 {¶ 48} "Mr. Spring: Any address — *Page 8 
 {¶ 49} "Mr. Shannon: For every address a zoning permit has been issued in the unincorporated area. Does there exist a zoning address file for Mr. Franks' property at 145 Baltimore-Somerset Road?
 {¶ 50} "Mr. Spring: For the permit activity there does not.
 {¶ 51} "Mr. Shannon: Okay.
 {¶ 52} "Mr. Spring: I have never been able to find one — {¶ 53} "Mr. Shannon: Okay.
 {¶ 54} "Mr. Spring: — in that file.
 {¶ 55} "Mr. Shannon: Have you ever been able to find proof that they submitted to validate their nonconforming use pursuant to the ordinance passed in 1960?
 {¶ 56} "Mr. Spring: I don't know. I've never seen any documentation thereof.
 {¶ 57} "Mr. Shannon: Okay.
 {¶ 58} "Mr. Spring: It's my understanding there was some records that were destroyed years ago, but I don't have any way to verify or deny that.
 {¶ 59} T. at 43-49.
 {¶ 60} Thereafter, CESN questioned Mr. Spring regarding his 2007 inspection of the property, to which he testified:
 {¶ 61} "That the property was in use as a junkyard or at least to my layman's knowledge. There was a lot of junk stored on that property, old autos, old books, old bottles. There was a commode. There was all kind of things back in the bushes."
 {¶ 62} T. at 50.
 {¶ 63} In response to CESN evidence, Mr. Estep testified that Mr. Franks held a valid junk yard license and salvage motor vehicle license at the property until his death. *Page 9 
Mr. Estep also presented the testimony of acquaintances of Mr. Franks who testified that Mr. Franks continued to occasionally sell parts from the vehicles at the property until a couple of years before he died.
 {¶ 64} At the conclusion of the hearing, the BZA went into deliberations and a motion was made to support the appeal. The same day, the BZA issued written findings of fact, stating in its entirety: "The January 16, 1960 Zoning Resolution requires a property owner to register a non-conforming use within 60 days. The property owner — Mr. Franks failed to register the non-conforming use." BZA Decision, April 18, 2007.
 {¶ 65} On May 17, 2007, Appellants filed a notice of appeal of the BZA's decision. Appellants alleged, inter alia, that "improper and incorrect evidence was knowingly presented by Appellee, Concerned East Side Neighborhood Group, at the April 18, 2007 hearing before the Liberty Township, Fairfield County, Ohio Board of Zoning Appeals, mistakingly (sic) and/or fraudulently improperly and incorrectly indicating that Appellants' said real estate was not properly and timely registered as a non-conforming use under the pertinent provisions of the controlling zoning resolution for Liberty Township, Fairfield County, Ohio, attached hereto as Exhibit "B"."
 {¶ 66} Appellant Richard Estep, by affidavit, also incorporated Exhibit "B" which appears to also be a copy of the 1960 Zoning Resolution, and filed it with Appellants' notice of appeal to the trial court. *Page 10 
 {¶ 67} On July 15, 2007, Liberty Township filed the transcript and exhibits in the case, including Exhibit M, which is a copy of the 1960 Zoning Resolution submitted by CESN at the BZA hearing. R.C. 2506.02.[1]
 {¶ 68} At this juncture, this Court notes that Exhibit M (which is marked as including 10 pages) does not include a page number 18, which is submitted in Exhibit "B" attached to Appellant Richard Estep's affidavit. This page is entitled "Non-Conforming Uses" and lists "Fanny Rebecca Franks — Junk Cars" under the category of Signs. It also appears to this Court that Exhibit M is a copy of the 1960 Zoning Resolution and not the original book referenced in the discussion between Mr. Shannon and Mr. Spring. Nor does Exhibit M include any official minutes from the BZA or planning and zoning commission as indicated by the testimony.
 {¶ 69} Thereafter, the parties filed briefs with the trial court. In their brief, Appellants not only challenged the legality of the Township's registration requirement, but also contended that page 18, which was not apparently provided to the BZA, demonstrates that Franks registered a non-conforming use on the property for junk cars. Therefore, Appellants contend the BZA's decision was unlawful, unreasonable, and unsupported by the preponderance of substantial, reliable and probative evidence.
 {¶ 70} In their briefs to the trial court, neither CESN nor Liberty Township addressed the issue of the missing page 18 or contest the authenticity of the document filed by Appellants. In addition, CESN conceded: *Page 11 
 {¶ 71} "Appellee Group, in good faith, must concede that it seems, apparent, after thorough research on the subject, that in Ohio law, a township zoning resolution providing for the immediate termination of a non-conforming use based upon a failure to register such use within a specified time frame would be in conflict with R.C. 519.19, which expressly permits the continuation of a non-conforming uses, unless such conforming use is voluntarily discontinued for two years or more."
 {¶ 72} Brief of Appellee CESN, pp. 13-14, filed September 17, 2007.
 {¶ 73} In addition, the Township stated in its brief "[t]he Township is simply not comfortable endorsing the position of one side over another. * * * In this proceeding, again, the Zoning Inspector made only one very temporal and limited determination, expressly finding that as of January 12, 2007, the observed conditions at the subject Property were not in violation of the Liberty Township Zoning Resolution. The decision simply did not explain or detail the reasons for this finding of no violation, nor did it (or the testimony before the BZA) fully describe the physical circumstances at the Property that existed as of the date of the decision."
 {¶ 74} Brief of Appellee Liberty Township, pp. 6, 11, filed September 24, 2007.
 {¶ 75} The trial court, without addressing the merits of the parties' contentions or the unusual procedural posture of this case, ruled on December 13, 2007, as follows:
 {¶ 76} "[T]his Court is, pursuant to R.C. 2506.04, limited to the whole record plus any new or additional evidence admitted under R.C. 2506.03. There was no such new or additional evidence admitted, nor could there have been pursuant the (sic) language of the statute since the missing page does not fall into any of the situations which would allow new or additional evidence to be considered by this Court. Further, Appellants do *Page 12 
not offer any explanation regarding the reason pursuant to R.C. 2506.03
that the resolution submitted to the BZA in evidence during the hearing lacked the last page. Thus, this Court must consider only the record below and the evidence presented to and considered by the Board of Zoning Appeals to determine if the BZA's Decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.
 {¶ 77} "Here, there is nothing in the evidence considered by the BZA below or in the record properly before this Court pursuant to R.C. 2506.04 to indicate that Mr. Franks registered his non-conforming use. The Court further notes the BZA's Decision rested solely on such finding. Thus, this Court believes that its scope of review is limited to a determination of whether that finding is supported by a preponderance of substantial, reliable and probative evidence. Therefore, this Court can only find that the BZA's Decision that Mr. Franks failed to register the non-conforming use of his property after the adoption of the January 16, 1960 Resolution is supported by the evidence which the BZA had before it and which is presently before this Court.
 {¶ 78} "Upon consideration, the BZA's denial of Appellant's request for use of their property as a non-conforming use is hereby AFFIRMED."
 {¶ 79} Judgment Entry, December 13, 2007(emphasis in original).
 {¶ 80} A timely appeal to this Court was filed by Appellants. *Page 13 
 {¶ 81} Appellants raises three Assignments of Error:
 {¶ 82} "I. THE RELEVENT PAGE OF A TOWNSHIP RESOLUTION, SHOWING TIMELY REGISTRATION OF A NON-CONFORMING USE, WAS ALWAYS PART OF THE ADMINISTRATIVE RECORD AND THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE PAGE.
 {¶ 83} "II. THE TRIAL COURT ERRED IN RULING APPELLANTS DID NOT PROPERLY SUPPLEMENT THE RECORD UNDER R.C. 2506.03.
 {¶ 84} "III. THE TRIAL COURT VIOLATED APPELLANTS' DUE PROCESS RIGHTS."
 I {¶ 85} In the first assignment of error, Appellants argue the trial court erred as a matter of law in concluding that page 18 was not part of the administrative record in this case.
 {¶ 86} Appellants contend that the official copy of the Zoning Resolution was in the custody and control of the Township and due to the some sort of oversight, the last two pages of the resolution were not transmitted to the BZA and subsequently the trial court. Since there is no dispute the Zoning Resolution was part of administrative record, Appellants submit the trial court should have considered the entire Zoning Resolution, including page 18, in ruling on the merits of the case.
 {¶ 87} Appellees argue Appellants should have supplemented the record at the BZA level once they became aware of the missing page. In any event, Appellees *Page 14 
suggest Appellants should have motioned the trial court, pursuant to R.C. 2506.03[2], to accept the missing page 18 as "new or additional" evidence.
 {¶ 88} This Court's scope of review in an appeal from a common pleas court decision in an administrative appeal is extremely limited; we review the common pleas court's decision "only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34, 465 N.E.2d 848.
 {¶ 89} As an initial matter, we note the BZA considered an issue not raised in CESN's notice of appeal to the BZA, that is the question of whether Mr. Franks had registered his property as a non-conforming use in 1960. As the Township has acknowledged, this issue also was not raised in the Zoning Administrator's letter dated January 12, 2007. However, it was the sole basis for the BZA's decision.
 {¶ 90} Our review of the record establishes that the 1960 Zoning Resolution was admitted into the record as Exhibit M. However, possibly through oversight or inadvertence (which can occur with exhibits in proceedings) relevant portions of the Zoning Resolution, including page 18, were not submitted to the BZA and subsequently the trial court. Therefore, we agree with Appellants' assertion that page 18 was in fact part of the administrative record and not "new or additional" evidence which may be included in the record under R.C. 2506.03 in limited circumstances. *Page 15 
 {¶ 91} We therefore find the trial court erred as a matter of law in failing to consider page 18 in rendering its decision. This prejudiced Appellants as it related to the key issue determined by the BZA.
 {¶ 92} The first assignment of error is sustained.
 II, III {¶ 93} In light of our resolution of Appellants' first assignment of error, assignments of error two and three are overruled as moot. See App. R. 12(A)(1)(c).
 {¶ 94} Accordingly, the judgment of the Fairfield County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this decision.
Delaney, J. Gwin, P.J. and Wise, J. concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas is reversed and this cause is remanded to the trial court for proceedings consistent with this Memorandum-Opinion. Costs assessed to Appellees.
[1] This statute states: "Within forty days after filing a notice of appeal in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the officer or body from which the appeal is taken, upon the filing of a praecipe by the appellant, shall prepare and file in the court to which the appeal is taken, a complete transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision."
[2] R.C. 2506.03 provides that a trial court shall hear additional evidence when reviewing an administrative order if one of the exceptions within that statute applies. *Page 1